```
 1          IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
                              PENNSYLVANIA
 2
                                  - - -
 3

 4   COMMONWEALTH OF PENNSYLVANIA  )   CRIMINAL DIVISION
                                   )
 5                     Plaintiff,  )   No. CC 93-15998
                                   )   Sentencing
 6        vs.                      )
                                   )
 7   MICHAEL EVANS,                )   Filed by:
                                   )
 8                     Defendant.  )   Nancy D. Kelly, RPR-CM
                                   )   Official Court Reporter
 9                                 )
                                   )   Hearing Date:
10                                 )
                                   )   April 6, 1995
11                                 )
                                   )   Before:
12                                 )   HONORABLE
                                   )   DAVID S. CERCONE
13                                 )
                                   )   COUNSEL OF RECORD:
14                                 )
                                   )   For the Commonwealth:
15                                 )   Office of the District
                                   )               Attorney:
16                                 )   DEBRA BARNISIN, ESQUIRE
                                   )   303 County Courthouse
17                                 )   Pittsburgh, PA  15219
                                   )
18                                 )   For the Defendant:
                                   )
19                                 )   VERDELL DEAN, ESQUIRE
                                   )   Suite 1609 Allegheny
20                                 )               Building
                                   )   Pittsburgh, PA  15219
21

22

23

24

25                                       - - -
```

1                         I N D E X

2   WITNESS:                                                    PAGE:

3   MICHAEL EVANS
         Direct Examination by Ms. Dean                          6
4

5   PAULA EVANS

6        Direct Examination by Ms. Dean                         16

7   THERESA BAKER

8        Direct Examination by Ms. Dean                         18
         Cross-Examination by Ms. Barnisin                      20
9

10  VALERIE ARNOLD

11       Direct Examination by Ms. Dean                         21

12

13

14

15

16

17

18

19

20

21

22

23

24

25                              - - -

```
 1                P-R-O-C-E-E-D-I-N-G-S
 2                         - - -
 3                THE CLERK:  Now is the time set
 4     for the sentencing of Michael Evans.
 5                         - - -
 6                (Whereupon, all witnesses were
 7     duly sworn.)
 8                         - - -
 9                THE COURT:  Before the imposition
10     of sentence in the case of Michael
11     Pernell Evans, the Court will afford the
12     defense, including the defendant himself
13     an opportunity to make appropriate
14     remarks.  Of course, I'll let the
15     district attorney's office, too, have
16     some input into sentencing by making any
17     recommendations or comments.
18                Miss Dean.
19                MS. DEAN:  Okay.  First of all
20     Your Honor, I would like to indicate for
21     the record that Mr. Evans did appear
22     before Your Honor and he pled guilty to
23     ten counts of robbery.  He pled nolo
24     contendere to four counts of criminal
25     conspiracy, count one of the indictment
```

1  was withdrawn, and at CC 93-16000, the
2  robbery count was nol prossed.
3      THE COURT: Do I have the file on
4  that case, the two cases?
5      MS. DEAN: Yes.
6      THE CLERK: That was already nol
7  prossed.
8      MS. BARNISIN: Your Honor, there
9  was only one count of robbery in that
10 case.
11     THE COURT: That whole file was
12 taken. Okay.
13     MS. DEAN: The agreement with the
14 assistant district attorney who is
15 present here today was that they would
16 not seek any further penalty as to the
17 criminal conspiracy at 9, 11, 13 and 15.
18     Your Honor, with respect to the
19 presentence report that has been
20 submitted to the Court, I have spoken
21 with Mr. Evans concerning the fact that
22 there were just a few things that he
23 really wanted to bring to light
24 specifically, and that was at the time of
25 his apprehension -- and he's going to

# AFFIDAVIT

COMMONWEALTH OF PENNSYLVANIA   :
                               :  SS:
COUNTY OF ALLEGHENY            :

### RE: Commonwealth v. Michael Evans

I, Verdell Dean, hereby depose and I state that I represented Michael Evans respecting certain criminal cases in Allegheny County. During my representation, I entered into a plea agreement with the District Attorneys Office wherein, Michael would plead guilty in exchange for the District Attorney's Office refraining from the participation in his sentencing. Subsequent to the sentencing, I learned that there were additional cases for which I was not his attorney. Had I been made aware of these additional cases, I would not have recommended that Michael Evans accept the plea agreement.

Additionally, during my representation of Michael Evans during his sentencing, I was aware that Michael Evans was previously in a mental health institution, that he was taking very strong medication for his mental health and that on that day, he had taken some medication. Mr. Evans initially on his written plea colloquy stated that he had taken medication. After discussion with me, Mr. Evans changed his response to "no" because I told him that if he answers "yes", the Judge may not accept the agreement. After presentation of our case at sentencing, the Court, nonetheless, exceeded what was expected to our extreme disappointment.

*Verdell Dean*

SWORN to and subscribed
before me this __3rd__ day of __August__, 2002.

*Angela M. House*
Notary Public

My Commission expires 6-2-03

EXHIBIT A

1  nothing further.

2  THE COURT: Ms. Barnisin.

3  MS. BARNISIN: Your Honor, the
4  defendant has done nothing with his adult
5  life but make a career of committing
6  crimes, abusing drugs, and acting
7  irresponsible. As you can see from the
8  records before you, his first criminal
9  conviction was when he was 23 years old
10 in 1984, and he has done nothing but
11 behave outrageously with his life since
12 that time.

13 He has no regard for the standard
14 by which society functions, by the laws
15 of society, by standards of human
16 decency, and there should be no question
17 by looking at his prior record that when
18 he is released from this crime, he would
19 probably commit more crimes. The
20 difference now is that previously it was
21 bad enough when he was just being
22 convicted of using drugs, drunk driving,
23 going into people's homes, stealing
24 things, but now he has a taste for using
25 a firearm and at this point he can be

considered as nothing but an extremely dangerous criminal which is what his records shows that he is.

It bothered me from the pre-sentence report reading the summary that was written up, from speaking with the defendant, and also with his family. There are several statements in there that said that friends are the ones that got him into crack cocaine. As a teen-ager he wasn't responsible for an incident that happened because somebody spiked his drink with unknown drugs. That the military was a bad influence on him. His group of friends were a bad influence on him. His girlfriend getting pregnant placed undue stress and influence on him. Even today, he told this Court that he tried to get people to notice that he needed help.

Well, where is this acknowledgement to this Court that at any point in his life he has taken responsible for anything that has happened to him? The whole summary of

```
 1    that presentence is structured as if he
 2    feels that he is a victim of other
 3    people.  He is a victim of society, and I
 4    will ask this Court today to hold the
 5    defendant responsible for what he has
 6    failed to take responsibility for.
 7              I would like to recall for you
 8    without going through each of the crimes,
 9    there were numerous victims involved in
10    these crimes, and the one day that
11    particularly sticks out for me is the
12    December 5 incident from 1993.  The
13    defendant stated to the presentence
14    investigator that he was so frightened
15    when he committed those crimes that he
16    urinated, he wet his pants.  And yet if
17    that happened at 8:00 in the morning when
18    he went in with a shotgun to the Eat N
19    Park, and he shot into the computer and
20    shot into the cash register and people
21    were so frightened for their lives they
22    ran into a freezer and hid, they were
23    cowering under tables, cowering under a
24    table, hiding behind booths, and if he
25    was so frightened, how could he have gone
```

1   back at 2:00 and committed another armed
2   robbery where he leveled a shot gun at
3   another clerk and cocked it?  He put a
4   round into the chamber while he was
5   holding this gun, leveled it at this
6   victim.  If he was scared enough to wet
7   his pants, imagine the fear of the
8   victims in those cases.
9        I would ask the Court to consider
10  his extensive prior record, before even
11  committing these crimes which was at 16,
12  and I would ask the Court to consider the
13  trauma and the fear that each of these
14  victims underwent as they were the
15  victims of this defendant's actions.
16       I would ask you to hold him
17  accountable.  I would ask you to give him
18  a very extensive jail sentence followed
19  by an extensive period of parole and
20  probation.
21       MS. DEAN:  Your Honor, just
22  briefly, I don't think that Mr. Evans
23  stood before you and indicated that he
24  wasn't responsible for these crimes.
25       Are you responsible for these

1  Q    Michael, what happened when you were released?
2       Did you start using drugs?
3  A    Not initially, no.                    EXHIBIT (5)
4  Q    Tell the Judge what you did.
5  A    Well, upon my release I reported to the East
6       Liberty branch of probation, parole office.  I
7       asked them did they think I need further
8       evaluation for drug abuse.  They deemed not.  They
9       told me to go ahead and work and continue with my
10      family life.  That's what I did.
11 Q    Were you given outpatient?
12 A    With YMCA Mon-Yough.  Miss Valerie Arnold here, I
13      was on one-on-one with her.
14 Q    Did you attend and did you participate in that?
15 A    Yes, I did.  I also participated in voluntary NA
16      groups, but by my work schedule it made it
17      difficult.
18 Q    Where were you working?
19 A    Allen Steel Company.
20 Q    What were you doing?
21 A    I was an overhead crane operator and a laborer.
22 Q    How long did you work there?
23 A    Off and on, for about two-and-a-half years.  Well,
24      two years.
25 Q    You're referring back to when you were in the

| | | |
|---|---|---|
| 1 | | Community Service? |
| 2 | A | Yes. |
| 3 | Q | But you had a problem when you were in the |
| 4 | | Community Service Center? |
| 5 | A | Yes. |
| 6 | Q | What kind of problem? |
| 7 | A | Drinking. |
| 8 | Q | Any drug use? |
| 9 | A | There was no drug use, no. |
| 10 | Q | Were you as a result sent back to the State |
| 11 | | Correctional Institution at Rockview? |
| 12 | A | I was sent back to Western Penitentiary due in |
| 13 | | part to what they said was marijuana urinalysis |
| 14 | | and alcohol. |
| 15 | Q | Okay.  And you were subsequently paroled; is that |
| 16 | | right? |
| 17 | A | That's correct. |
| 18 | Q | And that same employer hired you back; is that |
| 19 | | correct? |
| 20 | A | Yes, he did. |
| 21 | Q | And is it correct that you worked for that |
| 22 | | employer approximately three months while you were |
| 23 | | out, three to four months? |
| 24 | A | That is correct. |
| 25 | Q | And at the time were you living with a Theresa |

| | | |
|---|---|---|
| 1 | | Baker? |
| 2 | A | Yes, I was. |
| 3 | Q | And is she here today? |
| 4 | A | Yes, she is. |
| 5 | Q | Who is she? |
| 6 | A | She's sitting right here. |
| 7 | Q | Who is she? |
| 8 | A | She's my fiancee. |
| 9 | Q | Now, the presentence report indicates that you did |
| 10 | | not participate or cooperate with the parole |
| 11 | | agents when you were out as far as drug therapy |
| 12 | | was concerned? |
| 13 | A | Once I started, once I realized my addiction was |
| 14 | | getting the best of me, I tried my best to let the |
| 15 | | parties that was involved in my life know, you |
| 16 | | know, I tried to let them know that I was having |
| 17 | | problems.  Wholeheartedly I let them know I was |
| 18 | | having problems.  My parole agents thought it |
| 19 | | would be best I went to detox.  I went.  I |
| 20 | | succeeded in that.  I got out and I asked him was |
| 21 | | there a program did they have, called a Halfway |
| 22 | | Back Program.  They thought not.  They said for me |
| 23 | | to go on and to find a rehabilitation program on |
| 24 | | my own, and I did comply with what they asked me |
| 25 | | to do.  My first place I went to was the V.A. |

```
 1         Hospital with the intent of going to stay.
 2   Q     What happened at the V.A. Hospital?
 3   A     They turned me down because of some policy that
 4         was eliminated back in '81 or '82 where you have
 5         to have more time than I have in the service to be
 6         eligible to get in.
 7   Q     And as a result, what happened?  Did you get
 8         involved in the current offenses?  What happened?
 9         Just tell the Court.
10   A     I've tried several other rehabilitation programs,
11         Your Honor, with the intent to get in.  Each time
12         I applied myself, they gave me a waiting period of
13         two weeks, and clearly at that point, I wasn't fit
14         to be on the streets with this much idle time.  I
15         tried to apply myself in college, signed up for
16         college courses at the north side branch of
17         Community College.  I got with Ms. Arnold and let
18         her know I was deteriorating, that as the days go
19         on, I was becoming very weak.  I became very
20         complacent.  I tried to do a little baby sitting
21         with my children and take time out.  The drugs had
22         me so messed up, that I find myself one night
23         sitting in the living room sweating, craving for
24         crack cocaine.  I thought it would be a good idea
25         to go outside and take a walk.  When I went out, I
```

|  |  |  |
|---|---|---|
| 1 |   | never came back. |
| 2 | Q | And what did you do? |
| 3 | A | Started running. |
| 4 | Q | Did you commit crimes? |
| 5 | A | Yes. |
| 6 | Q | Why? |
| 7 | A | To supply my habit for crack cocaine. |
| 8 | Q | Is there anything, Mike, that you would like to |
| 9 |   | tell Judge Cercone before he sentences you? |
| 10 |   | We're going to call some other witnesses, but |
| 11 |   | this is your time to address him and say whatever |
| 12 |   | you have to say. |
| 13 | A | Your Honor, since the crime, since my |
| 14 |   | incarceration, and since I've realized that you |
| 15 |   | are the one person solely in charge of this whole |
| 16 |   | episode, I sit down over about a hundred times and |
| 17 |   | try to write you a letter. I thought it would be |
| 18 |   | in my best interest to send it to you before this |
| 19 |   | proceedings, but that would have took away as my |
| 20 |   | attorney said, the impact of what I'm saying and I |
| 21 |   | don't want to try to come at you with any type of |
| 22 |   | game because everybody wants to say things to |
| 23 |   | sound good. I don't want that. I just want you |
| 24 |   | to know that since my incarceration I have done |
| 25 |   | everything in my power to reconcile with those |