IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA


MICHAEL P. EVANS                    :


v                               : NO. 00-664


FRANKLIN J. TENNIS, et al.      :


## APPLICATION FOR RELIEF IN PURSUANT TO F.R.C.P. RULE 60(b)(2)(6)

COMES NOW, Michael P. Evans (petitioner), herein, pro se;
respectfully requests this honorable court grant relief and
relieve the judgment by the above enumerated subsections. And
the petitioner avers the following:

1). The District Court failed to acknowledge ineffective
assistance of counsel.

2). The District Court failed to hold a hearing on a factual
dispute when a mis-carriage of justice was asserted.

WHEREFORE, petitioner prays this honorable court grant relief
by relieving petitioner's judgment.


Respectfully Yours,

*Michael P. Evans*

Michael P. Evans

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA


MICHAEL P. EVANS                    :

v                                   : NO. 00-664

FRANKLIN J. TENNIS, et al.    :


## MEMORANDUM IN SUPPORT OF PETITION FOR RELIEF IN PURSUANT TO
## RULE 60(b)(2)(6)
### PROCEDURAL HISTORY

In 1995, Michael P. Evans (petitioner), entered into a
plea-agreement, pleading guilty to robbery 18 Pa.C.S.A.
3701(a)(1), in the Court of Common Pleas of Allegheny county
at dockets CC-9315998; CC-93160000 of counts 2 through 8, 10,
12, and 14, and entered a plea of "nolo contendre" to counts
9, 11, 13, and 15.

On April 6, 1995, petitioner was sentenced to twenty (20)
to forty (40) years of state incarceration. On May 18, 1994,
through the Office of the Public Defender, David Mentike sought
withdrawal due to conflicting interests. On May 25, 1994, Verdell
Dean (counsel) was appointed trial counsel, then counsel ignited
several pre-trial motions. On April 6, 1995, petitioner was
sentenced to afore-mentioned term.

On August 22, 1996, petitioner filed a "pro se" petition
for "Post Collateral Relief" (P.C.R.A.). On September 23, 1997,

the P.C.R.A. court denied relief and petitioner filed a timely appeal to the Superior Court of Pennsylvania. On April 9, 1999, the Superior Court denied relief. On November 9, 1999, Pennsylvania Supreme Court denied petitioner's "allowance of appeal" at 370 W.D. 1999.

On April 2, 2000, petitioner filed his original habeas corpus in the United States District Court for the Western District of Pennsylvania, alleging, inter alia, "ineffective assistance of counsel" at 00-664. Attached at Exhibit (1). On April 12, 2001, the United States magistrate "summarily" recommended dismissing the action as meritless. As a result, the United States District Court adopted the magistrates recommendation and dismissed the action without hearing. Attached at Exhibit (2). Petitioner then filed an application for "Certificate of Appealability" at 01-2424. On July 8, 2002, the Third Circuit Court of Appeals denied the application.

## SUBSEQUENT P.C.R.A.

On August 8, 2002, petitioner received an "Affidavit" from counsel, stating she was ineffective, and that she encouraged petitioner to change his answers on the plea agreement. Attached at Exhibit (3).

To satisfy the PICARD v CONNOR, 92 S.Ct. 509 (1971); McCANDLESS v VAUGHN, 172 F.3d 255 (1999) (state inmate must exhaust his state remedies), standard, petitioner filed a subsequent P.C.R.A. at original state docket number.

The Court of Common Pleas of Allegheny county, again; denied relief. On August 25, 2004, the Superior Court of Pennsylvania

affirmed the lower court's decision at 2035 WDA 2003.

On October 5, 2004, the Superior Court denied petitioner's petition for re-argument. On March 3, 2006, petitioner filed application to file second habeas corpus under 06-2922 & 062992. On July 7, 2006, the Third Circuit Court of Appeals denied that application.

## APPLICABLE 60(b) MOTION

Petitioner now files this 60(b) motion attacking the integrity of the first habeas corpus proceeding where the District Court erroneously disregarded petitioner's ineffective assistance of counsel claims, GONZALEZ v CROSBY, 125 S.Ct. 2641 (2005) (Holding a 60(b) motion that attacks the integrity of the prior habeas corpus proceeding, not the claims, is to be construed as a motion; not as a successive habeas corpus petition), and violating applicable standards for holding a evidentiary hearing. Similarly, Rule 60(b)(2) is applicable to newly discovered evidence that could not have diligently been discovered in time to move for a new trial under rule 59(b). Rule 60(b)(6) is applicable for any other reason, including a miscarriage of justice, that justifies relief from the operation of the judgment.

## NOTE

Before asserting these issues, petitioner would like to remind the court the Third Circuit has recognized a pro se petitioner's pleading should be liberally construed to obtain substantial justice. UNITED STATES v GARTH, 188 F.3d 99 (3rd Cir. 1999); LEWIS v ATTORNEY GENERAL, 878 F.2d 714, 721 (3rd

Cir. 1989).

## DISCUSSION

On April 7, 2000, petitioner filed a writ of habeas corpus alleging, inter alia, counsel was ineffective for failing to file a oral or written motion withdrawing petitioner's plea, and petitioner's plea was unknowing; under a "manifest miscarriage of justice." Attached at Exhibit (4), memorandum at 5 & 6.

The Commonwealth responded that ineffective assistance of counsel needs to allege innocence. Id., at Commonwealth Brief at 14. Although a miscarriage of justice was asserted. Id. Likewise, the Commonwealth argued a presumption of correctness in the state court should prevail because the petitioner's assertions lack merit.

On April 12, 2001, the magistrate judges' recommendation and report adopts and recommends the Commonwealth's arguments; dismissing petitioner's habeas corpus without a hearing. On May 15, 2001, the District Court adopts said recommendation and also dismisses petitioner's habeas corpus.

## QUESTIONS, APPLICABLE STATUTES, AND RULES OF HOLDING A EVIDENTIARY HEARING

Did the District Court abused its discretion; disregarding a hearing when the court accepted the states contention of no merit when a disputed miscarriage of justice was asserted?

When a federal court accepts a state courts finding under a presumption of correctness on findings of fact, can the federal court accept that finding when it's a mixed question of fact

and law? The answer is no!

A federal court cannot accept mixed questions of fact and law. The Supreme Court only recognizes' four (4) issues in distinguishing between findings of fact and mixed fact and law determinations, and petitioner's issues are included:

1). Pretrial indentification. SUMNER v MATA, 449 U.S. 539, 101 S.Ct. 764 (1981);

2). Ineffective assistance of counsel, STRICKLAND v WASGINGTON, 466 U.S. 688, 698, 104 S.Ct. 2052 (1984);

3). Voluntariness of a confession, MARSHALL v LONBERGER, 459 U.S. 422, 103 S.Ct. 843 (1983).

4). Whether a supsect was entitled to Miranda Warnings, See MARSHALL.

These doctrines are specifically held by the Supreme Court to be a mixed fact and law in nature; distinguishing what is a mixed question requiring a hearing. Thus, we can not see where the presumption of correctness applies to this case.

The Supreme Court has held a federal court must hold an evidentiary hearing if the state trier of fact did not afford the petitioner a full and fair fact hearing. In TOWNSEND v SAIN, 372 U.S. 293, 83 S.Ct. 745 (1963) (overrulled in part by, KEENEY v TAMAYO-REYES, 504 U.S. 1, 112 S.Ct. 1715 (1992). The court held a federal court must hold an evidentiary hearing for a habeas applicant under the following circumstances, in relevant part:

1). "If the merits of the factual dispute were not resolved

in the state hearing; . . .(4) there is a substantial
allegation of new evidence; (5) the material facts were
not adequately developed at a state-court hearing; or (6)
for any reason it appears that the state trier of fact did
not afford the Habeas applicant a full and fact hearing,"
Id., at 313. See also; 28 U.S.C. sub-section 2254(d).


Although the listed circumstances in TOWNSEND are those
in which a hearing must be held. If a petitioner has a right
to a hearing he must prove facts by a preponderance of the
evidence.

However, where he may have no right to a hearing he must
prove facts by the higher standard of convincing evidence. Id.
Petitioner claims a misscarriage of justice, and will prove
to the standard here; regardless.

### INEFFECTIVE ASSISTANCE OF COUNSEL-BREACH OF CONTRACT

In not having an evidentiary hearing, the court could not
effectively resolve ineffective assistance of counsel claims.
Petitioner agreed to an "oral" and documented plea agreement;
not a breach of contract. As part of the agreement, the District
Attorney (DA) verbally stated she would not participate in the
sentencing hearing. Meaning, the Commonwealth would not argue
sentencing in this matter. Yet, that is exactly what she did.

Then, the DA amended the indictment, adding ten (10) counts
of robbery and conspiracy, while further, seeking a enhancement
of petitioner's sentence. Attached at Exhibit (5), at Pg., 4.

In SANTEBELLO v NEW YORK, 404 U.S. 257, 92 S.Ct. 495 (1971),

the Supreme Court unequivocally held a prosecutor may enter
into a plea agreement, but after doing so, must fulfill its
promises contained therein. If the prosecutor fails to do so,
whether properly or inadvertently, the breach of contract must
be remedied, regardless whether the defendant was prejudiced
thereby. Id. In order to determine whether a plea agreement
was breached; the first step is to define what the Commonwealth
agreed to do, then, the parameters of said agreement. DUNN v
COLLERAN, 247 F.3d 450 (3rd Cir. 2001). How could the habeas
court remedy the merits of a contractual dispute without holding
a hearing?

Likewise, it was counsel's ethical obligation to protect
ptitioner's constitutional rights, not conspire to breach those
rights. Thus, counsel knew of the breach of contract, but failed
to object, request an adjournment, or petiton to withdraw
petitioner's plea at sentencing. This fact rendered counsel
ineffective. DUNN supra at 247 F.3d 450, 457. STRICKLAND v
WASHINGTON, 466 U.S. 688, 104 S.Ct. 2052 (1984).

### INEFFECTIVE ASSISTANCE OF COUNSEL-UNKNOWING PLEA

Petitioner's counsel was ineffective for instructing
petitioner to commit perjury, when she encouraged him to change
the answers 60, 61, and 62 from "yes" to "no" in the written
plea colloquy. Each question revolves around the mental
competency of the petitioner, which counsel knew was detrimental
to his plea.

Later however, counsel explained to the petitioner: "if
you had answered yes to the questions the court would not have

accepted your plea." That explanation does not rise to the standard of a knowing and intelligent awareness of the relevant consequences of a plea. What it does demonstrate is counsel's ability to encourage her client to commit perjury when she knew those answers were correct prior to the changes. Then, the state court's inquiry on the questions, instinctively, struck a nerve with the court that a problem was present; but did nothing about it. Attached at Exhibit (5), at Pg., 9.

In the situation the petitioner was in at the time, charged with robbery and conspiracy, facing enormous amount of jail time, petitioner believed-as an officer of the court-counsel had his best intentions in mind. Remember, to him the Commonwealth and the court was vying against him. Therefore, petitioner had no choice to take the advice of counsel; mistakenly, not explaining the true facts to the court.

Indeed, advice given by counsel puts petitioner in a precarious situation to make a cognitive choice-in the mental condition he was in-to either lie to the court without knowing the consequences of his actions, or take the advice of counsel and proceed on with what he did not understand. He chose the latter.

It has been well settled in order to obtain a effective waiver of a constitutional right requires a waiver must, not only be voluntary, but constitute a "knowing and intelligent" relinquishment or abandonment of a known right or privilege. JOHNSON v ZERBST, 394 U.S. 458, 464, 59 S.Ct. 1019, 1023 (1938).

In BRADY v UNITED STATES, 397 U.S. 742, 748, 90 S.Ct. 1463,

1469 (1970), the Supreme Court of the United States refined the JOHNSON standard by requiring valid waivers not only be voluntary, but also be knowing and intelligent acts done with sufficient awareness of the likely consequences Id. (Emphasis added); Accord, BROOKHART v JANIS, 434 U.S. 1, 86 S.Ct. 1245; UNITED STATES v LEVY, 25 F.3d 146 (1998).

As a result, counsel rendered herself ineffective, and fraudulently advised petitioner to commit perjury to uphold a agreement she herself agreed too.

These issues, standing alone, can not be proven without documentation or physical evidence. Again, On August 3, 2002, Attorney Dean composed and delivered to petitioner a complete affidavit notifying petitioner she not only encouraged him to change those answers on the plea agreement, she was ineffective for the above discussed.

### CONCLUSION

In light of the above, petitioner has demonstrated to this court that if he had been afforded a evidentiary hearing, counsel would have testified to the above said and documented. Further, by not relieving the judgment in this matter would subject the petitioner to a mis-carriage of justice that would never be corrected.

Respectfully Submitted,

*Michael P. Evans*

Michael P. Evans

## CERTIFICATE OF SERVICE

I, Michael Evans hereby certify a true and correct copy
of the foregoing has been sent, on this _5TH_ day of September
2006, via United States Postal Service, Pre-paid, First Class,
to the following:


District Attorney's Office-Rebecca Spangler

436 Grant Street

Pittsburgh, PA 15219


Amy Reynolds Hay-Magistrate Judge

U.S. Post Office & Courthouse

700 Grant Street

Pittsburgh, PA 15219


*Michael P. Evans*

Michael P. Evans

AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

# United States District Court

| | District WESTERN | |
|---|---|---|
| Name MICHAEL EVANS | Prisoner No. AF-9736 | Case No. C.A CC-664 |

Place of Confinement

S.C.I. ROCKVIEW, BOX A.,PELLEFONTE, PA 16823

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| MICHAEL EVANS | V.  COMMONWEALTH OF PENNSYLVANIA |

The Attorney General of the State of: MICHAEL FISCHER

## PETITION                    APR 0  2000

1.  Name and location of court which entered the judgment of conviction under attack  ALLEGHENY COUNTY COURT

    PITTSBUGH, PENNSYLVANIA, 15219

2.  Date of judgment of conviction  April 6, 1995

3.  Length of sentence  Twenty to Forty Years

4.  Nature of offense involved (all counts) ROBBERY(10 counts) and Conspiracy (4-counts)

    _____

    _____

    _____

    _____

5.  What was your plea?  Check one)
    (a) Not guilty                ☐
    (b) Guilty                    ☒  To Robbery counts
    (c) Nolo contendere           ☒  To Conspiracy counts
    If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:

    Three counts of Robbery were dismissed as agreement to plea.

    _____

6.  If you pleaded not guilty, what kind of trial did you have? (Check one)
    (a) Jury                      ☐
    (b) Judge only                ☐               N/A

7.  Did you testify at the trial?
    Yes ☐        No ☐

8.  Did you appeal from the judgment of conviction?
    Yes ☐        No ☒

Cviii2iT(1)

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

    (a) Name of court    A DIRECT APPEAL WAS FILED THROUGH A PCRA PETITION.

    (b) Result _____

    (c) Date of result and citation, if known _____

    (d) Grounds raised _____

    _____

    (e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

        (1) Name of court _____

        (2) Result _____

        _____

        (3) Date of result and citation, if known _____

        (4) Grounds raised _____

        _____

    (f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

        (1) Name of court _____

        (2) Result _____

        _____

        (3) Date of result and citation, if known _____

        (4) Grounds raised _____

        _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
    Yes ☒        No ☐

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court   COURT OF COMMON PLEAS OF ALLEGHENY COUNTY

        (2) Nature of proceeding   POST CONVICTION PROCEEDINGS

        _____

        (3) Grounds raised   INEFFECTIVE COUNSEL FOR FAILURE TO WITHDRAWAL THE

        PLEA AS UNKNOWING AND UNCONSTITUTIONAL.

AO 243 (Rev. 5.85)

SPECIFICALLY, THE COMPLETE RAMIFICATIONS WERE NOT EXPLAINED

BY PLEA COUNSEL, AND PETITIONER WAS NOT COMPETENT TO ENTER PLEA.

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
   Yes ☐          No ☒

(5) Result _____ DENIED ALL RELIEF

(6) Date of result ___ NOVEMBER 25, 1997.

(b) As to any second petition, application or motion give the same information:

   (1) Name of court _____

   (2) Nature of proceeding _____

   _____

   (3) Grounds raised _____

   _____

   _____

   _____

   _____

   (4) Did you receive an evidentiary hearing on your petition, application or motion?
      Yes ☐          No ☐

   (5) Result _____

   (6) Date of result _____

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
   (1) First petition, etc.          Yes ☒     No ☐     ALLOWANCE DENIED ON 11/9/1999.
   (2) Second petition, etc.         Yes ☐     No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

   _____

   _____

   _____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting the same.
   Caution: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted you state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(h) Denial of right of appeal.

A.    Ground one: WHETHER PRIOR COUNSEL PROVIDED INEFFECTIVE ASSISTANCE, INSO FAR AS THE COMPLETE RAMIFICATION OF THE PLEA WAS NOT EXPLAINED,

Supporting FACTS (state *briefly* without citing cases or law) Petitioner was not mentally competent when he entered his plea, as anewring question he simply agreed to all matters. Plea counsel induced the plea by instructing the petitioner in error and giving the petitioner the answers.

B.    Ground two: _____

Supporting FACTS (state *briefly* without citing cases or law) _____

AO 241 (Rev. 5-85)

C.    Ground three: _____

_____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____

_____

_____

_____

_____

_____

_____

D.    Ground four: _____

_____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____

_____

_____

_____

_____

_____

_____

13.  If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

Each contention was raised indentically in both Superior and Supreme

Court. The Petitioner has exhausted state remedies.

_____

14.  Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
     Yes ☐         No ☒

15.  Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:

     (a)    At preliminary hearing    MICHAEL SMOLIN _____

     _____

     (b)    At arraignment and plea    VERDELL DEAN _____

_____

(6)

AO 243 (Rev. 5 85)

(c)  At trial _____

_____

(d)  At sentencing  _        _        VERDELL DEAN _____

_____

(e)  On appeal ___ JOSEPH V. LUVARA _____

_____

(f)  In any post−conviction proceeding ___ PATRICIA L. BLAIS _____

_____

(g)  On appeal from any adverse ruling in a post−conviction proceeding _____
     JOSEPH V. LUVARA

16.  Were you sentenced on more than one count of an indictment. or on more than one indictment, in the same court and the same time?

Yes ☒        No ☐

17.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes ☐        No ☒

(a)  If so, give name and location of court which imposed sentence to be served in the future: _____

_____

(b)  Give date and length of the above sentence: _____

_____

(c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes ☐        No ☒

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

__April 4, 2000_____
      (date)

_Michael Evans_____
Signature of Petitioner

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL EVANS,                          )
                                        )
                    Petitioner,         )
                                        )
          v.                            )     Civil Action No. 00-664
                                        )
SUPERINTENDENT, STATE                   )
CORRECTIONAL INSTITUTION                )
ROCKVIEW,                               )
                                        )
                    Respondent,         )
                                        )
          and                           )
                                        )
THE ATTORNEY GENERAL OF THE             )
COMMONWEALTH OF PENNSYLVANIA,           )
                                        )
                                        )
          Additional Respondent.        )

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.   **RECOMMENDATION**

          It is respectfully recommended that the instant petition
for writ of habeas corpus be dismissed and that a certificate of
appealability be denied.

II.  **REPORT**

          Petitioner is a state prisoner incarcerated at the State
Correctional Institution at Rockview, Bellefonte, Pennsylvania.
Petitioner entered into a plea agreement with the Commonwealth
whereby three counts of robbery were dismissed and the Commonwealth
agreed to seek no further penalty with respect to several criminal
conspiracy charges.  Petitioner thereafter pleaded guilty to the
remaining several counts of robbery on November 21, 1994, and was
sentenced February 7, 1995, to an aggregate term of imprisonment of

twenty (20) to forty (40) years. Plaintiff filed a counseled motion to modify sentence which was denied. He did not file a direct appeal.

Petitioner filed a petition pursuant to the Post Conviction Relief Act (PCRA) on August 22, 1996, in which he challenged the voluntary nature of his guilty plea (Commonwealth Exhibit 3). Counsel was appointed, and the petition was amended to include a claim that petitioner was unable to understand his guilty plea due to crack cocaine withdrawal symptoms, and that his potential sentence was misrepresented to him as being 100 years when, in fact, he faced a possible 200 years incarceration. The trial court denied the petition (Commonwealth Exhibit 7).

Petitioner appealed, asserting again his claims attacking his guilty plea (Commonwealth Exhibit 8). The Superior Court of Pennsylvania affirmed the lower court's order on April 20, 1999. Petitioner's subsequent Petition for Allowance of Appeal was denied by the Supreme Court of Pennsylvania on November 9, 1999.

Petitioner now files the instant petition for writ of habeas corpus in which he asserts that the plea was not adequately explained to him by counsel, and that he was not mentally competent to enter his plea. The Commonwealth has responded, and the petition is ripe.

The first issue in any habeas corpus proceeding instituted by a state prisoner is whether the petitioner has exhausted his state court remedies. Exhaustion requires that the claims presented in the federal court have been presented in substantially the same

- 2 -

form to the state's highest court, with identity of both facts and legal theory. <u>Bond v. Fulcomer</u>, 864 F.2d 306 (3d Cir. 1989). Even if the claims have been so presented to the state's highest court, "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. §2254(c); <u>Castille v. Peoples</u>, 489 U.S. 346 (1989). And, although the requirement is not jurisdictional, it "should be strictly adhered to because it expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." <u>Landano v. Rafferty</u>, 897 F.2d 661, 669 (1990). The requirement also recognizes the duty, and ability, of the state courts to uphold federal law, and serves the interest of ensuring a fully developed record in the state court. <u>Id.</u> Finally, a federal habeas court is required to dismiss a petition which contains both exhausted and unexhausted claims. <u>Rose v. Lundy</u>, 455 U.S. 509, 510 (1982); <u>Landano v. Rafferty</u>, <u>supra</u>.

It appears that petitioner has exhausted state court remedies since he has challenged the voluntary nature of his guilty plea in the state courts, and has been denied relief by the state's highest court. Nonetheless, petitioner is not entitled to relief.

It must be remembered that a plea of guilty must stand absent proof that the defendant was unaware of the direct consequences of his plea, or if it was induced by threats, misrepresentations or improper promises. <u>Mabry v. Johnson</u>, 467 U.S.

- 3 -

504, 509 (1984), quoting <u>Brady v. United States</u>, 397 U.S. 742, 755 (1970).

> "The focus of a federal habeas inquiry is the nature
> of the advice and the voluntariness of the plea, not
> the existence as such of an antecedent
> constitutional infirmity. . . . When a criminal
> defendant has solemnly admitted in open court that
> he is in fact guilty of the offense with which he is
> charged, he may not thereafter raise independent
> claims relating to the deprivation of constitutional
> rights that occurred prior to the guilty plea. He
> may only attack the voluntary and intelligent
> character of the guilty plea by showing that the
> advice he received from counsel was not within the
> standards set forth in <u>McMann</u> [McMann v. Richardson,
> 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d
> 763 (1970) (guilty plea is not open to attack if the
> `advice was within the range of competence demanded
> of attorneys in criminal cases')]."

<u>Siers v. Ryan</u>, 773 F.2d 37, 42 (3d Cir. 1985), quoting <u>Tollett v. Henderson</u>, 411 U.S. 258, 266-67 (1973).

Here, petitioner's claims each bring into question the intelligent and voluntary nature of his guilty plea. Indeed, since he has entered a plea of guilty, petitioner is not entitled to relief either in the state court, or this court, unless the plea was not knowingly and intelligently entered. The state court, however, reviewed the record and made findings concerning plaintiff's guilty plea. First, the PCRA court addressed petitioner's claim that his potential sentence was understated:

> Defendant correctly notes that he was not properly
> advised of the maximum possible penalty that he
> could receive. Defendant was advised that he could
> receive a maximum possible sentence of 100 years on
> the robbery counts, when in fact he faced a possible
> maximum sentence of 200 years on these counts.
>
> We fail to see how Defendant has been prejudiced by
> this error, however, as Defendant received a total

- 4 -

> sentence of 20 to 40 years, an aggregate sentence less than the erroneous maximum state to Defendant.
>
> Had Defendant received an aggregate sentence in excess of the maximum sentence that he was advised, then prejudice would have been established. Where Defendant received a total sentence that is 60 years less that the stated maximum. However, we are hard pressed to find any prejudice to the Defendant.

(Commonwealth Exhibit 7 at 3). In fact, petitioner's claim fails as a matter of logic. The possibility of an even greater sentence would have counseled even more in favor of a guilty plea by which three counts of robbery were dismissed by the Commonwealth. In any event, the misstatement concerning the possible maximum sentence to which petitioner was exposed does not make his plea unknowing or involuntary.

Petitioner also asserts that he was not competent to plead guilty due to the symptoms of crack cocaine withdrawal. The trial court noted that it questioned petitioner during the plea colloquy. That questioning convinced the court that petitioner "understood his rights and knowingly, voluntarily and intelligently entered his plea of guilty . . .." (Commonwealth Exhibit 7 at 1-2). Further, petitioner did not make any complaint concerning his guilty plea until after he received his sentence, some three months after his plea. Had petitioner not understood the possible range of sentences, or if he had been impaired on that date, he certainly had sufficient opportunity to raise such claims prior to his sentencing. That he did not do so until he received his sentence, however, is a strong indication that petitioner is merely disappointed with his

⊃ 72A
(ev.8/82)

sentence, which is not a proper basis for challenging his guilty plea. Petitioner is not entitled to habeas relief.

### CONCLUSION

Wherefore, on the basis of the foregoing, it is respectfully recommended that the instant petition for writ of habeas corpus be dismissed and that a certificate of appealability be denied.

In accordance with the Magistrate's Act, 28 U.S.C. Section 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

KENNETH J. BENSON
UNITED STATES MAGISTRATE JUDGE

Dated: April 12, 2001

cc:  Michael Evans, AP-9736
     SCI-Rockview
     Box A
     Bellfonte, PA 16823

     Rebecca D. Spangler, Esquire
     Assistant District Attorney
     Office of the District Attorney
     401 Allegheny County Courthouse
     Pittsburgh, PA 15219

- 6 -

O 72A
(ev.8/82)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL EVANS,                          )
                                        )
                Petitioner,             )
                                        )
        v.                              )    Civil Action No. 00-664
                                        )        JUDGE ZIEGLER
SUPERINTENDENT, STATE                   )    MAGISTRATE JUDGE BENSON
CORRECTIONAL INSTITUTION                )
ROCKVIEW,                               )
                                        )
                Respondent,             )
                                        )
        and                             )
                                        )
THE ATTORNEY GENERAL OF THE             )
COMMONWEALTH OF PENNSYLVANIA,           )
MICHAEL FISCHER,                        )
                                        )
        Additional Respondent.          )

## MEMORANDUM ORDER

Petitioner's petition for writ of habeas corpus was received by the Clerk of Court on April 7, 2000, and was referred to United States Magistrate Judge Kenneth J. Benson for report and recommendation in accordance with the Magistrates Act, 28 U.S.C. §636(b)(1), and Local Rules 72.1.3 and 72.1.4 C.

The magistrate judge's report and recommendation, filed on April 12, 2001, recommended that the petition for writ of habeas corpus be dismissed and that a certificate of appealability be denied. The parties were allowed ten (10) days from the date of service to file objections. Service was made on petitioner on April 16, 2001, by certified mail delivery to the State Correctional Institution Rockview at Bellefonte, Pennsylvania, where he is incar-

cerated, and on respondents by first-class mail on April 12, 2001.
Objections were filed by petitioner on April 25, 2001 (Docket #9).
After de novo review of the pleadings and documents in the case,
together with the report and recommendation and objections thereto,
the following order is entered:

AND NOW, this *15th* day of *May*, 2001;

IT IS HEREBY ORDERED that the petition for writ of habeas
corpus is dismissed.

IT IS FURTHER ORDERED that a certificate of appealability
is denied.

The report and recommendation of United States Magistrate
Judge Kenneth J. Benson, dated April 12, 2001 (Docket #8), is
adopted as the opinion of the court.

*It is Finally Ordered that the objections of petitioner shall be and hereby are denied.*

DONALD E. ZIEGLER
UNITED STATES DISTRICT JUDGE

cc:  Honorable Kenneth J. Benson
     United States Magistrate Judge

     Michael Evans, AP-9736
     SCI Rockview
     Box A
     Bellefonte, PA 16823

     Rebecca D. Spangler, Esquire
     Assistant District Attorney
     Office of the District Attorney
      of Allegheny County
     401 Allegheny County Courthouse
     Pittsburgh, PA 15219

     Superintendent SCI-Rockview
     Box A
     Bellefonte, PA 16823

# A F F I D A V I T

COMMONWEALTH OF PENNSYLVANIA    :
                             :    SS :

COUNTY OF ALLEGHENY                 :

### RE: Commonwealth v. Michael Evans

I, Verdell Dean, hereby depose and I state that I represented Michael Evans respecting certain criminal cases in Allegheny County. During my representation, I entered into a plea agreement with the District Attorneys Office wherein, Michael would plead guilty in exchange for the District Attorney's Office refraining from the participation in his sentencing. Subsequent to the sentencing, I learned that there were additional cases for which I was not his attorney. Had I been made aware of these additional cases, I would not have recommended that Michael Evans accept the plea agreement.

Additionally, during my representation of Michael Evans during his sentencing, I was aware that Michael Evans was previously in a mental health institution, that he was taking very strong medication for his mental health and that on that day, he had taken some medication. Mr. Evans initially on his written plea colloquy stated that he had taken medication. After discussion with me, Mr. Evans changed his response to "no" because I told him that if he answers "yes", the Judge may not accept the agreement. After presentation of our case at sentencing, the Court, nonetheless, exceeded what was expected to our extreme disappointment.

*(signature)*

SWORN to and subscribed
before me this ___3rd___ day of ___August___, 2002.

*(signature)*
Notary Public

My Commission expires 6-2-03

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL EVANS                        : Civil Action No. 00-664

       Petitioner                      :

                             :

       v.                              :

                             :

SUPERINTENDENT MEYERS, ET AL.,    :

       Respondents                     :

RESPONSE MEMORANDUM IN SUPPORT OF

WRIT OF HABEAS CORPUS FOR PETITIONER

AND NOW, comes, Michael Evens (Petitioner), who files this Response Memorandum, in support thereof represents the following:

### I. EXHAUSTION

The Petitioner as evidenced by the record has filed a PCRA Petition in state court challenging the voluntary nature of his guilty plea, raising ineffective assistance of prior counsel, under the provision of 42 PA.C.S. Section 9541-9546, et.seq.

The Petitioner raised his Constitutional claims in his initial PCRA Petition filed in the lower state court. The identical issue's were raised to the Superior Court, and thereafter raised in a discretionary appeal to the State Supreme Court.

For the purposes of 2244(d), the petitioner filed his PCRA Petition on August 22, 1996. PCRA Counsel was appointed an filed an amended PCRA Petition.

On April 29, 1997, PCRA Counsel Patricia L. Blais filed an Ameded PCRA Petition. The PCRA Court dismissed the petition without a evidentiary hearing, which a timely appeal was filed to the Superior Court of Pennsylvania at docket no. 2129 PGH 1997.

EXHIBIT (4)

However, the matter was remanded for appointment of new counsel to represent the appeal, in which Joseph V. Luvara was appointed.

The Superior Court affirmed judgement on April 20, 1999. A timely Petition for Allowance of Appeal was filed and subsequently denied on November 9, 1999, at Docket No. 370 W.D. 1999.

The instant writ of habeas corpus was filed within one year of the denial of the Petition for Allowance appeal, in which the instant writ of habeas corpus petition is timely as required by 28 U.S.C §2244(d)(1).

The Commonwealth has not attached to its answer a copy of the Supreme Court Petition for Allowance of Appeal. However, since the Commonwealth has not objected to any matter being exhausted, this court can review the merits of the claims under <u>Duncan v. Henry</u>, _.U.S._, 115 S.Ct. 887, 888 (1995).

The record support's the petitioner has presented the state court with his constitutional claims identically at all stages of adjudication.

In addition, at issue is whether the last reasoned judgement applied the correct federal precedents reasonably to the facts. 28 U.C.S. Section 2254(d)(1)(2).

Instantly, the Commonwealth attempts to claim a procedural default occurred, because on appeal PCRA Counsel in a footnote had cited the plea colloquy as being defective in the manner of the total sentence being erroneously explained. This is error, rather PCRA Counsel utilized the footnote as an illustration to demonstrate the mis statement further proves the petitioner could not fully comprehend the ramification of the procedures and nothing more, it was not an argument and is not an argument here, but rather an historical fact that must be considered in the totality of the circumstances.

Clearly, appellant has exhausted all available state remedies and his issue's are cognizable under the Amended provisions of 2254(d) supra as follows:

2

MERITS

A)WHETHER PLEA COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO
THE PLEA COLLOQUY AND FOR FAILURE TO FILE A MOTION TO WITHDRAWAL
THE PLEA.


In reviewing the Commonwealth's answer, it is respectfully
submitted, the Commonwealth has applied relevant federal
authority in error.

Recently, the United States Supreme Court made clear that a
petitioner procedurally defaults a claim if he fails to raise it
in a discretionary state appeal. O'Sullivan v. Boreckel,
_.U.S._, 119 S.Ct. 1728, 1734, 144 L.Ed.2d 1 (1999). Here,
appellant has sought discretionary review by the Pennsylvania
Supreme Court, in which there is no issue of procedural default
and/or exhaustion in the instant case at bar. Moreover, because
of the O'Sullivan ruling, on May 19, 2000, the Pennsylvania
Supreme Court issued an order that "Discretionary Review" is no
longer required for a petitioner in Pennsylvania to satisfy
exhaustion. I.d.

Petitioner's habeas petition was filed after the effective
date of the Antiterrorism and Effective Death Penalty Act
(AEDPA), this court's standard review is governed by 2254(d)(1),
as amended. See Mattio v. Superintendent, S.C.I. Albion, 171
F.3d 877, 884-85 (3rd Cir. 1999)(en banc).

Petitioner in his state appeal raised two points to
demonstrate his plea was involuntary and that failure to allow a
withdrawal would result in a manifest miscarriage of justice.

First, Petitioner demonstrated that he was incompetent at the
time of entering the plea due to his drug addiction and
medication prescribed during the entry of the plea.

Clearly the record demonstrates the petition was not competent
when he entered his guilty plea, and counsel was ineffective for
advising his client to agree to such a plea.

The legal standard applied reasonably, is a basic rule. The
Third Circuit has outlined the correct standard in Hull

3

v. Kyler, 190 F.3d 88 (3rd Cir. 1999), in which Hull entered a plea of guilt to First Degree murder in Franklin County, Pennsylvania. Hull moved to withdrawal his guilty plea on the basis his prior counsel did not adequately contest or develop his competency to stand trial. During his state court appeals, the Superior Court relied on the plea colloquy and the Superior Court was impressed with Hull's ability to recount in detail his actions and emotions at the time of the murder. The Court held his ability demonstrated he was able to assist counsel and understand the proceedings against him, making his ineffective counsel claim meritless. Hull at 93.

In deciding Hull the Third Circuit applied the state of the law at the time of Hulls conviction.

The basic rule for competency to stand trial is that a defendant must (1) have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and (2) possess " a rational as well as factual understanding of the proceedings against him." Hull at 105 [21](citations omitted).

The petitioner was in Farview for mental problems, among other State mental institutions, while at the County facility, he was placed on the special needs unit and was prescribed heavy psychotropic medications, which his counsel was aware of, thus, he was on crack cocaine.

During the plea phase the petitioner was required to fill in a written plea colloquy. There, the petitioner was required to answer a long list of questions. With a degree of specificity, the petitioner answered "yes" to each and every question listed on the plea colloquy sheet.

The Petitioner answered "yes" that (1) he was forced and threatened to enter a plea, and (2) under the influence of medication and narcotics which impaired his ability to understand his rights and voluntary enter a plea. See questions 60 through 63 of the written plea colloquy in Commonwealth's Answer Exhibit M).

Plea counsel rather than question the fact of reasons behind

the petitioner's answer, simply convinced his client to correct the answers because there exited a plea agreement actually inducing the plea.

The Court held no on the record examination, and counsel entered a plea of ten counts of Robbery.

To add to defective plea colloquy, the petitioner was mis-informed of the full ramifications of the sentence, as it was explained he could receive 140 years as a maximum, when in fact the true maximum would be 240 years, with the additional four counts of criminal conspiracy.

Plea counsel used this error by the Petitioner to set the stage for the alleged plea bargain. Plea counsel explained to the Petitioner he was not to say anything, as he would receive a ten year sentence, and he should correct the written plea colloquy so the plea bargain could take its course.

Clearly, there exist no reasonable basis for counsel's actions. The Petitioner was clearly incompetent to enter the plea as his ability to consult rationally with his counsel was impaired and clearly he could not and did not understand the proceedings instituted.

This Petitioner has an ability to follow a lead intelligently when directed, which is the case here.

The actual record supports the petitioner instructed the court he was not guilty of most of the robberies, however, he wanted to get this over with and because of the deal he was offered, he agrees to enter a plea. See Commonwealth's answer exhibit (a) plea proceeding at p., 11.

The state court has never permitted this petitioner to develop any evidence on-the-record to support his claim. In light of the plea colloquy and the written version relied upon by the Commonwealth, there should be an evidentiary hearing for this court to make credibility determinations, rather than rely upon the cold record. Zilich v. Reid, 36 F.3d 317 (3rd Cir. 1994)(citations omitted).

The Petitioner's plea here was not voluntary or intelligent, rather is was entered unknowingly by a mis understanding of the

proceedings and by false misrepresentations of plea counsel.

Accordingly, a reasonable attorney would not have allowed a client to enter into such a plea agreement when the client's mental abilities are impaired because mental disabilities and medications that further impair the cognitive function of the mind.

As PCRA counsel correctly states in his brief to Superior Court; 'Plea counsel's deficient performance prejudiced the petitioner to a degree resulting in a manifest miscarriage of justice because it created a situation whereby the petitioner's defenses were never asserted and no trial was ever held. See Appellant's state court brief at p., 13 (Exhibit 8).

Clearly, the petitioner has satisfied the test of <u>Strickland v. Washington</u>, 466 U.S. at 687.

Had counsel objected to the defective plea colloquy and sought a hearing on the petitioner's competence the outcome of these proceedings may have resulted differently.

Secondly, plea counsel provided ineffective assistance by failure to file a Motion to Withdraw the plea.

The decision to plead guilty must be knowingly and intelligently made, with a complete understanding of the charges, the full ramifications and consequences therefrom. <u>Commonwealth v. Lewis</u>, _.Pa.Super._, 634 A.2d 633, 635 (1993 )(citations omitted).

In the instant case at bar, **it is clear** under the totality of circumstances that the Petitioner's plea was not knowingly or intelligently entered. Rather, it is a Due process violation under the Fourteenth Amendment of the United States Constitution.

Clearly counsel can be deemed ineffective for failure to withdraw a plea in a timely fashion.

The Petitioner suffered a further "manifest injustice" because he was severely prejudiced by his plea counsel's failure to file a motion to withdrawal the plea which was entered pursuant to a defective plea colloquy. See <u>Commonwealth v. Jones</u>,

_.Pa.Super._, 596 A.2d 885 (1991).

Finally, the totality of the circumstances must be judged by the petitioner's impairment, which he was unable to properly waive his right to a jury trial.

The Petitioner asserted to the court during the open plea process that he was not guilty of most of these robberies, he was induced by plea counsel to change his answers of the written plea sheet, the court further induced his plea by asserting evidence of a criminal conspiracy charge against him. See Plea Colloquy at page (12).

Clearly, counsel on the cold record can be deemed ineffective, insofar as the cold record supports the petitioner was unlawfully induced to enter a plea that was not knowingly or intelligent.

The State Superior Court is the last reasoned judgement. Reviewing its opinion in the Commonwealth's Answer at Exhibit 9), demonstrates the Superior Court failed to apply a reasonable application of Federal case authority to the correct historical facts of the case. The Petitioner is clearly entitled to relief under 2254(d)(1). Mattio, supra.

Contrary to the last reasoned judgement, a comprehensive review of the record and appeal, clearly does support the petitioner in addition to the issue of being incompetent, did assert his innocence as admitted during the plea colloquy and cited by appeal counsel under 42 PA.C.S. Section 9543(a)(2)(iii).

## CONCLUSION

The Petitioner respectfully seeks a evidentiary hearing to develop his issue of competence and to settle the dispute among reasonable jurist who will clearly conclude a due process violation has occurred due to plea counsel's ineffective representation under the Sixth Amendment.

Respectfully submitted,

Michael Evans

Prepared by
_____

7

CERTIFICATE OF SERVICE

The undersigned, hereby certifies that a true and correct copy
of the within document was served this 18th day of July, 2000 by
First Class U.S. Mail to the persons indicated below:

CLERK OF COURTS
U.S. DISTRICT COURT
PITTSBURGH, PA 15320

REBECCA SPANGLER, ESQ
OFFICE OF THE DISTRICT ATTORNEY
401 COURT HOUSE
PITTSBURGH, PA 15219

S/ _Michael Evans_____

MICHAEL EVANS

8

```
 1        IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
                            PENNSYLVANIA
 2
                              - - -
 3

 4   COMMONWEALTH OF PENNSYLVANIA  )  CRIMINAL DIVISION
                                   )
 5                     Plaintiff,) No. CC 93-15998
                                   )  Sentencing
 6          vs.                    )
                                   )
 7   MICHAEL EVANS,                )  Filed by:
                                   )
 8                     Defendant.)  Nancy D. Kelly, RPR-CM
                                   )  Official Court Reporter
 9                                 )
                                   )  Hearing Date:
10                                 )
                                   )  April 6, 1995
11                                 )
                                   )  Before:
12                                 )  HONORABLE
                                   )  DAVID S. CERCONE
13                                 )
                                   )  COUNSEL OF RECORD:
14                                 )
                                   )  For the Commonwealth:
15                                 )  Office of the District
                                   )            Attorney:
16                                 )  DEBRA BARNISIN, ESQUIRE
                                   )  303 County Courthouse
17                                 )  Pittsburgh, PA  15219
                                   )
18                                 )  For the Defendant:
                                   )
19                                 )  VERDELL DEAN, ESQUIRE
                                   )  Suite 1609 Allegheny
20                                 )            Building
                                   )  Pittsburgh, PA  15219
21

22

23

24

25                       - - -
```

2

1                           I N D E X
                            - - -
2    WITNESS:                                        PAGE:

3    MICHAEL EVANS
          Direct Examination by Ms. Dean              6
4

5    PAULA EVANS

6         Direct Examination by Ms. Dean             16

7    THERESA BAKER

8         Direct Examination by Ms. Dean             18
          Cross-Examination by Ms. Barnisin          20
9

10   VALERIE ARNOLD

11        Direct Examination by Ms. Dean             21

12

13

14

15

16

17

18

19

20

21

22

23

24

25                        - - -

```
 1                 P-R-O-C-E-E-D-I-N-G-S

 2                      - - -

 3           THE CLERK:  Now is the time set

 4      for the sentencing of Michael Evans.

 5                      - - -

 6           (Whereupon, all witnesses were

 7           duly sworn.)

 8                      - - -

 9           THE COURT:  Before the imposition

10      of sentence in the case of Michael

11      Pernell Evans, the Court will afford the

12      defense, including the defendant himself

13      an opportunity to make appropriate

14      remarks.  Of course, I'll let the

15      district attorney's office, too, have

16      some input into sentencing by making any

17      recommendations or comments.

18           Miss Dean.

19           MS. DEAN:  Okay.  First of all

20      Your Honor, I would like to indicate for

21      the record that Mr. Evans did appear

22      before Your Honor and he pled guilty to

23      ten counts of robbery.  He pled nolo

24      contendere to four counts of criminal

25      conspiracy, count one of the indictment
```

4

1   was withdrawn, and at CC 93-16000, the

2   robbery count was nol prossed.

3           THE COURT:  Do I have the file on

4   that case, the two cases?

5           MS. DEAN:  Yes.

6           THE CLERK:  That was already nol

7   prossed.

8           MS. BARNISIN:  Your Honor, there

9   was only one count of robbery in that

10  case.

11          THE COURT:  That whole file was

12  taken.  Okay.

13          MS. DEAN:  The agreement with the

14  assistant district attorney who is

15  present here today was that they would

16  not seek any further penalty as to the

17  criminal conspiracy at 9, 11, 13 and 15.

18          Your Honor, with respect to the

19  presentence report that has been

20  submitted to the Court, I have spoken

21  with Mr. Evans concerning the fact that

22  there were just a few things that he

23  really wanted to bring to light

24  specifically, and that was at the time of

25  his apprehension -- and he's going to

EXHIBIT (●)

30

1          nothing further

2                    THE COURT:  Ms. Barnisin.

3                    MS. BARNISIN:  Your Honor, the

4          defendant has done nothing with his adult

5          life but make a career of committing

6          crimes, abusing drugs, and acting

7          irresponsible.  As you can see from the

8          records before you, his first criminal

9          conviction was when he was 23 years old

10          in 1984, and he has done nothing but

11          behave outrageously with his life since

12          that time.

13                    He has no regard for the standard

14          by which society functions, by the laws

15          of society, by standards of human

16          decency, and there should be no question

17          by looking at his prior record that when

18          he is released from this crime, he would

19          probably commit more crimes.  The

20          difference now is that previously it was

21          bad enough when he was just being

22          convicted of using drugs, drunk driving,

23          going into people's homes, stealing

24          things, but now he has a taste for using

25          a firearm and at this point he can be

1    considered as nothing but an extremely

2    dangerous criminal which is what his

3    records shows that he is.

4         It bothered me from the

5    pre-sentence report reading the summary

6    that was written up, from speaking with

7    the defendant, and also with his family.

8    There are several statements in there

9    that said that friends are the ones that

10   got him into crack cocaine.  As a

11   teen-ager he wasn't responsible for an

12   incident that happened because somebody

13   spiked his drink with unknown drugs.

14   That the military was a bad influence on

15   him.  His group of friends were a bad

16   influence on him.  His girlfriend getting

17   pregnant placed undue stress and

18   influence on him.  Even today, he told

19   this Court that he tried to get people to

20   notice that he needed help.

21        Well, where is this

22   acknowledgement to this Court that at any

23   point in his life he has taken

24   responsible for anything that has

25   happened to him?  The whole summary of

32

1        that presentence is structured as if he

2        feels that he is a victim of other

3        people.  He is a victim of society, and I

4        will ask this Court today to hold the

5        defendant responsible for what he has

6        failed to take responsibility for.

7               I would like to recall for you

8        without going through each of the crimes,

9        there were numerous victims involved in

10       these crimes, and the one day that

11       particularly sticks out for me is the

12       December 5 incident from 1993.  The

13       defendant stated to the presentence

14       investigator that he was so frightened

15       when he committed those crimes that he

16       urinated, he wet his pants.  And yet if

17       that happened at 8:00 in the morning when

18       he went in with a shotgun to the Eat N

19       Park, and he shot into the computer and

20       shot into the cash register and people

21       were so frightened for their lives they

22       ran into a freezer and hid, they were

23       cowering under tables, cowering under a

24       table, hiding behind booths, and if he

25       was so frightened, how could he have gone

1          back at 2:00 and committed another armed

2          robbery where he leveled a shot gun at

3          another clerk and cocked it?  He put a

4          round into the chamber while he was

5          holding this gun, leveled it at this

6          victim.  If he was scared enough to wet

7          his pants, imagine the fear of the

8          victims in those cases.

9                    I would ask the Court to consider

10         his extensive prior record, before even

11         committing these crimes which was at 16,

12         and I would ask the Court to consider the

13         trauma and the fear that each of these

14         victims underwent as they were the

15         victims of this defendant's actions.

16                    I would ask you to hold him

17         accountable.  I would ask you to give him

18         a very extensive jail sentence followed

19         by an extensive period of parole and

20         probation.

21                    MS. DEAN:  Your Honor, just

22         briefly, I don't think that Mr. Evans

23         stood before you and indicated that he

24         wasn't responsible for these crimes.

25                    Are you responsible for these

1  Q    Michael, what happened when you were released?

2       Did you start using drugs?

3  A    Not initially, no.            EXHIBIT (5)

4  Q    Tell the Judge what you did.

5  A    Well, upon my release I reported to the East

6       Liberty branch of probation, parole office.  I

7       asked them did they think I need further

8       evaluation for drug abuse.  They deemed not.  They

9       told me to go ahead and work and continue with my

10      family life.  That's what I did.

11 Q    Were you given outpatient?

12 A    With YMCA Mon-Yough.  Miss Valerie Arnold here, I

13      was on one-on-one with her.

14 Q    Did you attend and did you participate in that?

15 A    Yes, I did.  I also participated in voluntary NA

16      groups, but by my work schedule it made it

17      difficult.

18 Q    Where were you working?

19 A    Allen Steel Company.

20 Q    What were you doing?

21 A    I was an overhead crane operator and a laborer.

22 Q    How long did you work there?

23 A    Off and on, for about two-and-a-half years.  Well,

24      two years.

25 Q    You're referring back to when you were in the

```
1          Community Service?
2    A     Yes.
3    Q     But you had a problem when you were in the
4          Community Service Center?
5    A     Yes.
6    Q     What kind of problem?
7    A     Drinking.
8    Q     Any drug use?
9    A     There was no drug use, no.
10   Q     Were you as a result sent back to the State
11         Correctional Institution at Rockview?
12   A     I was sent back to Western Penitentiary due in
13         part to what they said was marijuana urinalysis
14         and alcohol.
15   Q     Okay.  And you were subsequently paroled; is that
16         right?
17   A     That's correct.
18   Q     And that same employer hired you back; is that
19         correct?
20   A     Yes, he did.
21   Q     And is it correct that you worked for that
22         employer approximately three months while you were
23         out, three to four months?
24   A     That is correct.
25   Q     And at the time were you living with a Theresa
```

1       Baker?

2    A  Yes, I was.

3    Q  And is she here today?

4    A  Yes, she is.

5    Q  Who is she?

6    A  She's sitting right here.

7    Q  Who is she?

8    A  She's my fiancee.

9    Q  Now, the presentence report indicates that you did

10      not participate or cooperate with the parole

11      agents when you were out as far as drug therapy

12      was concerned?

13   A  Once I started, once I realized my addiction was

14      getting the best of me, I tried my best to let the

15      parties that was involved in my life know, you

16      know, I tried to let them know that I was having

17      problems.  Wholeheartedly I let them know I was

18      having problems.  My parole agents thought it

19      would be best I went to detox.  I went.  I

20      succeeded in that.  I got out and I asked him was

21      there a program did they have, called a Halfway

22      Back Program.  They thought not.  They said for me

23      to go on and to find a rehabilitation program on

24      my own, and I did comply with what they asked me

25      to do.  My first place I went to was the V.A.

```
 1        Hospital with the intent of going to stay.

 2   Q    What happened at the V.A. Hospital?

 3   A    They turned me down because of some policy that

 4        was eliminated back in '81 or '82 where you have

 5        to have more time than I have in the service to be

 6        eligible to get in.

 7   Q    And as a result, what happened?  Did you get

 8        involved in the current offenses?  What happened?

 9        Just tell the Court.

10   A    I've tried several other rehabilitation programs,

11        Your Honor, with the intent to get in.  Each time

12        I applied myself, they gave me a waiting period of

13        two weeks, and clearly at that point, I wasn't fit

14        to be on the streets with this much idle time.  I

15        tried to apply myself in college, signed up for

16        college courses at the north side branch of

17        Community College.  I got with Ms. Arnold and let

18        her know I was deteriorating, that as the days go

19        on, I was becoming very weak.  I became very

20        complacent.  I tried to do a little baby sitting

21        with my children and take time out.  The drugs had

22        me so messed up, that I find myself one night

23        sitting in the living room sweating, craving for

24        crack cocaine.  I thought it would be a good idea

25        to go outside and take a walk.  When I went out, I
```

13

```
 1        never came back.
 2   Q    And what did you do?
 3   A    Started running.
 4   Q    Did you commit crimes?
 5   A    Yes.
 6   Q    Why?
 7   A    To supply my habit for crack cocaine.
 8   Q    Is there anything, Mike, that you would like to
 9        tell Judge Cercone before he sentences you?
10             We're going to call some other witnesses, but
11        this is your time to address him and say whatever
12        you have to say.
13   A    Your Honor, since the crime, since my
14        incarceration, and since I've realized that you
15        are the one person solely in charge of this whole
16        episode, I sit down over about a hundred times and
17        try to write you a letter.  I thought it would be
18        in my best interest to send it to you before this
19        proceedings, but that would have took away as my
20        attorney said, the impact of what I'm saying and I
21        don't want to try to come at you with any type of
22        game because everybody wants to say things to
23        sound good.  I don't want that.  I just want you
24        to know that since my incarceration I have done
25        everything in my power to reconcile with those
```

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    )
                               )
          vs.            )    CC NO. _9315998_
                               )
_Michael Cyprus_          )

## GUILTY PLEA
### EXPLANATION OF DEFENDANT'S RIGHTS

You or your attorney have indicated to the officers of this Court that you wish to plead guilty or nolo contendere to certain specific criminal charges which the Commonwealth of Pennsylvania has brought against you.

In order to have your plea accepted by this Court here today, you must waive your right to confront the prosection witnesses against you and agree to permit an Assistant District Attorney to summarize the Commonwealth's evidence against you. You must agree to stipulate to the authenticity and accuracy of any Crime Laboratory reports presented by the Commonwealth and to the chain of custody of any of the Commonwealth's evidence involved in your case.

You must fully understand that your plea must be voluntary and no clemency is being promised in exchange for your plea, with the exception of any plea bargain or arrangement previously agreed to between your attorney and the Assistant District Attorney assigned to your case.

By pleading guilty to any charge you are admitting that you committed that offense. By pleading nolo contendere you are stating that you do not contest the charges against you. In either case, the Commonwealth would not have to prove each and every element of the crimes with which you are charged as would be required in a jury or non-jury trial.

Please be advised that you must fully understand that the Constitution of the United States of America and the Constitution of the Commonwealth of Pennsylvania give to you an absolute right to have a trial by jury.

If you intend to waive your Constitutional right to a trial by jury, please answer all the questions on this form. Most of the questions are designed to be answered "yes" or "no." Where general

1

attempted to force you in any way to plead guilty or nolo contendere, your plea will be rejected. Do you fully understand this? ___YES___

51. Has anybody forced you to enter this plea? ___YES___

52. Are you doing this of your own free will? ___YES___

53. Have any threats been made to you to enter a plea? ___YES___

54. Do you understand that if there is a plea bargain in this case the terms of the plea bargain will be stated on the record before the judge and that you will be bound by the terms of the plea bargain as they appear of record? ___YES___

55. Do you understand that this Court is not bound by any plea bargain entered into by you and the District Attorney? ___YES___

56. If the Court rejects the plea bargain after hearing a summary of the evidence, you would then have a right to withdraw your plea and your case would be reassigned to another judge before whom you would have the option of entering a straight plea with no plea bargain involved or have your case heard by that judge in a non-jury trial and, of course, you would still have the right to a trial by jury if you so desire. Do you fully understand this? ___YES___

57. Are you satisfied with the legal advice and legal representation of your attorney? ___YES___

58. Have you had ample opportunity to consult with your attorney before entering your plea, and are you satisfied that your attorney knows all of the facts of your case and has had enough time within which to check any questions of fact or law which either you or your attorney may have about the case? ___YES___

59. Has your attorney gone over with you the meaning of the terms of this document? ___YES___

60. Have you ever had any physical or mental illness that would affect your ability to understand these rights or affect the voluntary nature of your plea? ___YES___ NO (MK)

61. Are you presently taking any medication which might affect your thinking or your free will? ___YES___ NO (MK)

62. Have you had any narcotics or alcohol in the last forty-eight (48) hours? ___YES___ (NO) (MK)

63. A.   If you are entering a plea of guilty you admit that you committed the crime(s) with which you are charged and to

9

